UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
NILOUFAR BAHADORIFAR,
                                              :        21 Cr. 430 (RA)
                        Petitioner,                    24 Civ. 2732 (RA)
                                              :
        v. -
                                              :
UNITED STATES OF AMERICA,
                                              :
                        Respondent.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
NILOUFAR BAHADORIFAR'S MOTION TO VACATE OR SET ASIDE
<u>HER JUDGMENT OF CONVICTION</u>**


                                        MATTHEW PODOLSKY
                                        Acting United States Attorney
                                        Southern District of New York


Michael D. Lockard
Jacob H. Gutwillig
Matthew J.C. Hellman
Assistant United States Attorneys
        *Of counsel -*

**TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................. 1

    A.   Bahadorifar's Guilty Plea ..................................................................................... 2

    B.   Sentencing .............................................................................................................. 5

    C.   Bahadorifar's 2255 Petition ................................................................................ 6

DISCUSSION ..................................................................................................................... 7

    I.    Relevant Law ........................................................................................................ 7

    A.   Section 2255 ........................................................................................................... 7

    B.   Ineffective Assistance of Counsel ...................................................................... 8

    II.   The Petition Should be Denied ........................................................................... 9

    III.  An Evidentiary Hearing Is Not Necessary ...................................................... 14

CONCLUSION .................................................................................................................. 15

The Government respectfully submits this memorandum of law in opposition to the petition filed by Niloufar Bahadorifar ("Bahadorifar" or "Petitioner") to vacate her judgment of conviction pursuant to Title 28, United States Code, Section 2255 (the "Petition") (D.E. 82). In the Petition, Bahadorifar argues that she received ineffective assistance of counsel in connection with her guilty plea. Specifically, Bahadorifar argues that she was induced to plead guilty pursuant to a plea agreement based on misrepresentations from her prior counsel about her sentence and property forfeiture. However, the record, including sworn declarations from her prior counsel, contradicts Bahadorifar's arguments that her prior counsel made the misrepresentations she claims, and demonstrates that her plea was fully knowing and voluntary. The Petition, accordingly, should be denied.

## BACKGROUND

Superseding indictment S1 21 Cr. 430 (SAS) (the "Indictment") was filed on July 13, 2021. Count Two charged Bahadorifar with conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706; Count Three charged Bahadorifar with conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349; Count Four charged Bahadorifar with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and Count Five charged Bahadorifar with structuring, in violation of 31 U.S.C. § 5324.[1]

The charges against Bahadorifar arose from her efforts to, among other things, assist Iranian nationals, including at least one individual affiliated with Iranian intelligence services, Mahmoud Khazein, in evading sanctions designed to curb the same services' ability to bring about their missions of terror and human rights abuses in Iran and around the globe. Bahadorifar made a

---

[1] Co-defendants Alireza Shavraoghi Farahani, Mahmoud Khazein, Kiya Sadeghi, and Omid Noori were also charged in Count One with conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201.

payment on Khazein's behalf which, as described below, was part of a plot—with which she was not charged—to kidnap Masih Alinejad, a prominent Iranian dissident living in Brooklyn, New York[2] for rendition to Iran in order to silence her criticism of the Iranian regime. The Indictment does not allege that Bahadorifar had specific knowledge of the kidnapping plot; however, she knew that Khazein was affiliated with Iranian intelligence when she acted on his behalf. Bahadorifar also provided access to credit cards issued by U.S. banks and made payments to U.S. persons at Khazein's direction. Through her actions, Bahadorifar provided access to U.S.-based financial networks and services, effectively procuring them for the use of the Iranian intelligence community. In addition, Bahadorifar amassed significant unexplained wealth and made concerted efforts to hide it, accumulating hundreds of thousands of dollars in cash over a short period of time and masking the origin of those assets through structured deposits.

### A.    Bahadorifar's Guilty Plea

On December 15, 2022, Bahadorifar pleaded guilty to Counts Two (IEEPA conspiracy) and Five (structuring) pursuant to a written plea agreement with the Government, which was marked Court Exhibit 1 (the "Plea Agreement," attached hereto as Ex. A). The Plea Agreement provided for a stipulated sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 46 to 57 months' imprisonment (the "Stipulated Guidelines Range"). *Id*. at 4. The Plea Agreement further stated that "neither the Probation Office nor the Court is bound by the above Guidelines stipulation," *id*., but that Bahadorifar "will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 46 to 57 months' imprisonment." *Id*. at 5. The Plea Agreement

---

[2] Alinejad addressed the Court at Bahadorifar's sentencing.

also provided that Bahadorifar "hereby acknowledges that she has accepted this Agreement and decided to plead guilty because she is in fact guilty." *Id*. Finally, the Plea Agreement also provided that "[n]o additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by the parties." *Id*. at 7.

At the change of plea hearing, the Court conducted a thorough allocution that complied in all material respects with Rule 11 of the Federal Rules of Criminal Procedure.  At the outset, the Court asked a series of questions in response to which Bahadorifar confirmed that she was competent to enter a change of plea.  (Dec. 10, 2022 Transcript ("Plea Tr.") at 11, 13) (D.E. 3-4)). For example, Bahadorifar answered "Yes" when the Court asked whether he "mind [was] clear today" and if she "[understood] what's happening here[.]" (*Id.* at 4).  Counsel for Ms. Bahadorifar and the Government then confirmed neither had any doubt as to Bahadorifar's competence to plead guilty at the proceeding.  (*Id.*).

The Court then proceeded to specific questions about Bahadorifar's representation and her understanding of the Plea Agreement, including the possible sentence that might be imposed.  At the outset, Bahadorifar confirmed that she "had enough time and opportunity" to discuss the case with former counsel, "including the nature of the charges to which [she] intend[ed] to plead guilty, and any possible defenses," and also that Bahadorifar was satisfied with her attorneys' (now former counsel) representation of her.  (*Id.* at 4-5).  During the course of the proceedings, Bahadorifar acknowledged that the maximum sentence that could be imposed with respect to Count Two was 20 years' imprisonment, and with respect to Count Five was 10 years' imprisonment. (Dec. 10, 2022 Transcript ("Plea Tr.") at 11, 13) (D.E. 48)). Bahadorifar acknowledged having discussed the Sentencing Guidelines with her counsel, *id*. at 14-15; acknowledged the Stipulated Guidelines

3

Range in the plea agreement, id. at 16-17; and acknowledged that Probation and the Court were not bound by the Stipulated Guidelines Range. *Id*. at 17-18.

When asked if there was anything other than the terms of the Plea Agreement that induced Bahadorifar to plead guilty, she responded, "No." *Id*. at 19. When asked if anyone had made any promise as to what her sentence would be, Bahadorifar responded, "No." *Id*. When asked if she understood that if anyone attempted to predict what her sentence would be, that prediction could be wrong, Bahadorifar responded, "I understand." *Id*. The Court further elaborated on this point:

> THE COURT: I just want to make sure you understand that because, you know, no one knows what your sentence will be today. The government doesn't know, your lawyers don't know, I don't even know. I'm not going to make that determination until I get the presentence report prepared by the probation department, I do my own independent calculation of the guidelines, and I review all of the submissions both from the government and from you. But, even if your sentence is different from what you had expected or hoped for, that's not going to be a basis to withdraw your plea.
>
> Do you understand that?
>
> THE DEFENDANT: I understand.

*Id*. at 19-20.

After Bahadorifar stated what she did in order to be guilty of Counts Two and Five, including in response to questions posed by the Court and the Government, *id*. at 21-29, the Court found that Bahadorifar had acknowledged that she was in fact guilty of those counts. *Id*. at 30. Bahadorifar admitted that, without obtaining permission from the Office of Foreign Assets Control, "I caused a payment to be made to another person on behalf of a long-standing family friend who was a government official in Iran," *id*. at 21, *see also id.* at 24-25. Bahadorifar further admitted that "I made cash deposits of less than $10,000 each totaling $476,100 into my bank account in order to avoid my bank reporting to the government that I was making large cash

deposits," including more than $100,000 in a 12-month period. *Id*. at 22; *see also id.* at 26-27. Bahadorifar admitted that she knew her actions were illegal. *Id*. at 22-23.

With respect to forfeiture, Bahadorifar executed a consent preliminary order of forfeiture admitting to a forfeiture money judgment in the amount of $476,100. (D.E. 45.) The consent order provided, inter alia, that "the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment." *Id*. at 4. At the plea hearing, Bahadorifar confirmed her consent to the forfeiture money judgment. (Plea Tr. at 20.)

## B.    Sentencing

Sentencing was held on April 7, 2023. In connection with sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR") determining that the total offense level applicable to Counts Two and Five was 21, PSR at 14, with a sentencing range of 37 to 46 months' imprisonment, *id*. at 19.[3] The Probation Office recommended a sentence of 46 months' imprisonment. *Id*. at 34. The Probation Office explained its recommendation:

> Bahadorifar facilitated access to the U.S. financial system to intelligence assets serving the Islamic Republic of Iran. She engaged in structuring, laundering, and wire fraud activity involving funds of $445,000. And, although she is not believed to have known the scope of the operation, facilitated financial transactions to a private investigator who was conducting surveillance of an Iranian critic of the Islamic Republic of Iran. The critic, a NYC resident, was targeted to be the Iranian government for kidnapping, and likely eventual torture and murder.

*Id*. at 23-24.

Bahadorifar requested a sentence of probation. (D.E. 54 ("Defense Sent. Mem.") at 1-2), focusing principally on her lack of knowledge of the kidnapping plot, her also being a victim of

---

[3] As set forth in the Government's sentencing submission, Probation's Guidelines calculation differed from the Stipulated Guidelines Range in the Plea Agreement because Probation treated Counts Two and Five as a single group "because they involve the same victim (society at large)." (*See* Gov't Sent. Submission at 13-14) (D.E. 55). The Court agreed with the Government that Counts Two and Five involved different victims and therefore were properly grouped separately as in the Plea Agreement.

the Iranian regime's repression, and the stigma she faced in her community from her conviction. (Apr. 7, 2023 Tr. ("Sentencing Tr.") at 17-31) (D.E. 58).

Consistent with the Plea Agreement, the Court found that the correctly calculated total offense level was 23 with a Guidelines sentencing range of 46 to 57 months' imprisonment. *Id*. at 4-7. After hearing from the Government, defense counsel, the defendant, and the victim, Ms. Alinejad, the Court imposed a sentence of 48 months' imprisonment. *Id*. at 36.

Bahadorifar did not file an appeal from her judgment and conviction.

## C.    Bahadorifar's 2255 Petition

On April 11, 2024, Bahadorifar filed the Petition pursuant to 28 U.SC. § 2255 to vacate her judgment of conviction. The Petition argues that her prior counsel provided ineffective assistance in connection with her decision to plead guilty. Bahadorifar contends that she (1) insisted on her innocence at the outset of the case, including in December 2021 and August 2022; (2) agreed to plead guilty because she was repeatedly assured by prior counsel that she could avoid jail time if she pleaded guilty; (3) did not understand what the total offense level under the Guidelines meant and never saw the Guidelines sentencing table, though she did understand that the sentencing range under the Guidelines would be 46 to 57 months' imprisonment; and (4) was "assured" that "she would not go to prison" and that prior counsel had an agreement with the Government that she would not go to prison. Pet. at 14. Bahadorifar also acknowledges, however, that she was advised that there "always has been" a chance she would be sentenced to a term of imprisonment. *Id*. at 15.

The Petition further contends that, prior to her plea of guilty, prior counsel advised her that she would be able to secure the return of jewelry that had been seized when she was arrested, *id*.; though she also acknowledges that her attorneys advised her they would "try" to secure its return.

6

Bahadorifar asserts that prior counsel did not advise her that other property, such as the jewelry, could be forfeited as substitute assets. *Id*.

The Petition attaches a selection of Bahadorifar's text communications with one of her prior counsel, including messages that post-date her guilty plea. Pet. at 16-44. Bahadorifar did not file an affidavit with the Petition.

## DISCUSSION

**I.      Relevant Law**

**A.      Section 2255**

It is well-settled that "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

"A motion under § 2255 is not a substitute for an appeal." *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998). A claim (other than for ineffective assistance of counsel) may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review. *Reed v. Farley*, 512 U.S. 339, 354 (1994), *Massaro v. United States*, 538 U.S. 500, 505-06 (2003). A habeas petitioner may only raise a claim that was not presented on direct appeal if the petitioner establishes either (1) "cause" for failing to raise the issue and "actual prejudice" from the alleged violations; or (2) "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998). "Actual prejudice" requires the petition to show, "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S.

152, 170 (1982). "The "cause and prejudice" requirement applies to constitutional as well as non-constitutional claims. *Campo v. United States*, 968 F.2d 187, 190 (2d Cir. 1992).

With respect to claims that actually were raised on direct appeal, the mandate rule precludes relitigating matters expressly or impliedly resolved by the Circuit, including when factual predicates to an ineffective assistance claim were rejected by the appellate court. *Yick Man Mui v. United States*, 614 F.3d 50, 53-54 (2d Cir. 2010).

**B.    Ineffective Assistance of Counsel**

The burden of establishing both ineffective assistance of counsel and resulting prejudice is on the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffectiveness, the defendant must first overcome the "strong presumption" that counsel's conduct was reasonable and show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688-89; *see also Williams v. Taylor*, 529 U.S. 362, 389-90 (2000). Second, he must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94; *see also United States v. Acevedo*, 229 F.3d 350, 356 (2d Cir. 2000). Only if both elements of the test are satisfied can a reviewing court conclude that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

A claim of ineffective assistance of counsel in advising a defendant to plead guilty triggers a "voluntariness" inquiry. To set forth an ineffective assistance claim in the context of a plea, a defendant must show that the counsel's "deficient performance undermine[d] the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005); *see also United States v. John Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (finding that, when a defendant seeks to withdraw his plea on a claim that it was not voluntary, withdrawal

8

is not permitted unless the defendant has raised a "'significant question about the voluntariness of the original plea'") (quoting *Torres*, 129 F.3d at 715). However, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley*, 523 U.S. at 621.

## II.      The Petition Should be Denied

Bahadorifar's claim of ineffective assistance is without merit.

As an initial matter, Bahadorifar's contentions that she was "assured" that "she would not go to prison" and that prior counsel had an agreement with the Government that she would not go to prison are unsupported and, in fact, undermined by the actual record. Pet. at 14. The text messages between Bahadorifar and prior counsel attached to the Petition show, to the contrary, that prior counsel sought a plea agreement that counsel believed would leave "a very good chance to avoid jail," Pet. at 25; and advised Bahadorifar that she had a "decent chance" of a non-incarceratory sentence with "many good arguments," *id*. at 28; but that counsel expressly informed Bahadorifar that "the judge may or may not give you jail time." *Id*. at 27. There is no evidence of any promises that Bahadorifar would not be sentenced to imprisonment and no evidence of a representation that the Government had agreed to a sentence of no imprisonment.[4]

In addition, Bahadorifar's plea allocution flatly contradicts the assertions in the Petition. A defendant's sworn admissions in a guilty plea allocution carry "a strong presumption of veracity."

---

[4] The Petition also attaches text messages with prior counsel that occurred after her plea and in preparation for sentencing, and could not have induced her guilty plea. However, these text communications are consistent with the messages prior to her guilty plea: prior counsel expressed the view that Bahadorifar had a good chance of avoiding a term of imprisonment, but counsel made no promises that Bahadorifar would avoid jail and expressly advised that there was a chance she could be sentenced to prison time. *See, e.g.*, Pet. at 33 ("I think we can keep you out of jail"), 35 ("I think there's a very good chance you avoid jail"), 36("[Bahadorifar:] Means there is a chance to send me to jail[?] [Former counsel:] Always has been[.]").

9

*Cosey v. Lilley*, 62 F.4th 74, 85 (2d Cir. 2023) (quoting *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999)); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (A defendant's admissions during a plea proceeding, and any findings made by the judge in accepting a guilty plea, "constitute[] a formidable barrier" to challenging the validity of the plea, as they "carry a strong presumption of verity."). At her guilty plea hearing, Bahadorifar acknowledged that no one had made any promises about what her sentence would be and that there were no promises or agreements concerning her sentence except those contained in the plea agreement. She acknowledged that the Stipulated Guidelines Range was 46 to 57 months' imprisonment, and that the total maximum statutory term of imprisonment was 30 years. Where a defendant allocutes that her plea is knowing and voluntary and not the product of threats or undisclosed promises and representations, a district court is entitled to rely on those statements in rejecting a defendant's subsequent contradictory factual allegations. *See United States v. Torres*, 129 F.3d 710, 715-17 (2d Cir. 1997). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea," and may be rejected summarily. *Id.* at 715-17.

The sworn declarations submitted by Bahadorifar's prior counsel, Jeffrey Lichtman, Esq., and Jeffrey Einhorn, Esq., also directly contradict the assertions set forth in Bahadorifar's Petition claiming that her plea was not knowing and voluntary. (*See* Feb. 12, 2025 Declaration of Jeffrey Lichtman ("Lichtman Decl.") and Feb. 12, 2025 Declaration of Jeffrey Einhorn ("Einhorn Decl.")) (D.E. 118).[5] In response to Bahadorifar's core claim—that former counsel induced her to plead guilty based on their representation that her sentence would not include jail time—the Lichtman

---

[5] Certain portions of the Lichtman and Einhorn Affidavits were redacted in the publicly-filed versions. To the extent those portions are referenced in this opposition, they are redacted here as well.

and Einhorn Affidavits are unequivocal to the contrary. The Lichtman Affidavit states, "I repeatedly informed Ms. Bahadorifar that she faced significant jail time as a result of the charges, and told her that I would try my best for her to minimize or avoid an incarcerative sentence." (Lichtman Decl. ¶ 7). For his part, Einhorn states, "[r]epeatedly, I informed [Bahadorifar] that she faced significant jail time as a result of the charges, and informed her that we would do our best to minimize or avoid jail time. I never made any promises to her with regard to her sentence and never promised her that if she pleaded guilty she would avoid jail entirely." (Einhorn Decl. ¶ 7). Conversations between prior counsel and Bahadorifar about her sentencing exposure, including the possibility of jail time, "occurred several times, both over the phone and in person." (Einhorn Decl. ¶ 7). In response to Bahadorifar's desire to avoid prison, former counsel, "made clear to her that the only way she could likely avoid prison would be to go to trial and be acquitted ███

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

As the Lichtman and Einhorn Declarations make clear, and consistent with Bahadorifar's plea allocution, prior counsel discussed with Bahadorifar the Government's Plea Offer, the application of the Guidelines, and, specifically, the Stipulated Guidelines Range. (*See* Einhorn

---

█ ███████████████████████████████████████████

11

Decl. ¶ 18-20; Lichtman Decl. ¶ 14-17).   After the Government provided the parameters of a possible plea offer, which the Government relayed would have a Guidelines range of 46 to 57 months' imprisonment, prior counsel discussed the possible offer with Bahadorifar, "including her potential sentencing guidelines and statutory maximum sentence," and Bahadorifar "indicated that she would accept an offer that contained those terms."  (Lichtman Decl. ¶ 15; *see also id.* ¶ 7 ("I also discussed the sentencing guidelines multiple times with Ms. Bahadorifar – from initial estimates prepared by my office to the government's calculation in her plea agreement – as well as her statutory minimum and maximum sentence.")).   After conveying to the Government Bahadorifar's intention to accept such an offer, the Government extended the written Plea Agreement, which prior counsel relayed to Bahadorifar by email on December 2, 2022 and discussed with her by phone that evening, nearly two weeks before Bahadorifar's December 15, 2022 change of plea hearing.  (Einhorn Decl. ¶ 20; *see also* Lichtman Decl. ¶ 16 ("I asked Mr. Einhorn to forward the plea agreement to Ms. Bahadorifar for a call I was to have with her the following night.")).  Days before that hearing, on December 12, 2022, prior counsel forwarded to the Government a copy of the Plea Agreement executed by Bahadorifar.  (Einhorn Decl. ¶ 20).  On December 15, 2022, and as set forth above, Bahadorifar admitted her guilt to Counts Two and Five of the Indictment.  Bahadorifar's allocution was consistent with her statements to former counsel during the course of her case, which also debunk the unsupported, conclusory protestations of innocence in her Petition.  (*See, e.g.*, Lichtman Decl. ¶ 8 ("[Bahadorifar] would have outbursts and emotionally proclaim that she did nothing wrong.  These outbursts were then contradicted by her own admissions during other calls ███████████████████████████████████ ████████████████████████████████████  *see also* Einhorn Decl. ¶ 25 ("I also disagree with Ms. Bahadorifar's claims, through her attorney, that in all meetings she

12

professed her innocence.")).  In short, the Lichtman and Einhorn Declarations provide additional context, that, along with Bahadorifar's plea allocution, make clear that her plea was knowing and voluntary, that she was advised of the Stipulated Guidelines Range and statutory maximum, and that she was not promised, by former counsel or the Government, a non-incarceratory sentence.

Nor is there any support for Bahadorifar's contention that she received constitutionally deficient advice about the potential forfeiture consequences of her guilty plea that induced her to plead guilty. Though the Petition asserts that she was induced to plead guilty because, in addition to purportedly being promised she would not receive jail time, she was also purportedly promised she would recover possession of certain seized jewelry, Pet. at 45, the text messages Bahadorifar attaches to the Petition relating to her jewelry appear to have been exchanged shortly before her April 2023 sentencing, and after her December 2022 guilty plea. *See* Pet. 40-44. These post-plea communications could not have induced her plea. Regardless, in any event and as set forth above, Bahadorifar's former counsel provided her with the Plea Agreement—which included a forfeiture provision—weeks in advance of her change of plea hearing, discussed that document with her, and returned an executed copy to the Government in advance of her hearing. The consent preliminary order of forfeiture, in the amount of $476,000, was entered at Bahadorifar's plea and contained an unambiguous "substitute assets" provision. (D.E. 45 at 4; Plea Tr. at 20); *see also* Plea Agreement at 2 ("The defendant hereby admits the forfeiture allegations with respect to Counts Two and Five of the Indictment and agrees to forfeit to the United States a sum of money equal to $476,100[.]"). Whether satisfied through jewelry or otherwise, Bahadorifar was very clearly advised of the forfeiture consequences accompanying her guilty plea; which, as described herein, was knowing and voluntary.

13

Bahadorifar's reliance on the Ninth Circuit's decision in *Iaea v. Sunn*, 800 F.2d 621 (9th Cir. 1987), accordingly, is misplaced. See Pet. 46-47. In *Iaea*, counsel wrongly advised the defendant that a statutory minimum sentence would apply unless the defendant pleaded guilty; in fact, the minimum sentence did not apply to the defendant. 800 F.2d at 864-865. In addition, counsel advised the defendant that he might receive a probationary sentence and that the likelihood of an extended sentence was "almost zero," despite the defendant being a repeat offender and the prosecutor having informed defense counsel that the Government intended to seek an extended sentence. *Id*. at 863, 865. The Court of Appeals nonetheless concluded that the defendant's plea was intelligent, and remanded for an evidentiary hearing to determine if it was also voluntary based on former counsel's threat to withdraw from the representation if the defendant insisted on proceeding to trial. *Id*. at 865-68. Even if *Iaea* were persuasive precedent in this Circuit, it is thus readily distinguishable. Bahadorifar does not contend she received incorrect advice about the sentencing laws, as was the case in *Iaea*, nor are her allegations about former counsel's advice analogous to Iaea's counsel's advice that the chance of an extended sentence was "almost zero" despite the prosecution intending to seek an extended sentence. To the extent *Iaea* is analogous to this case, it is *Iaea*'s discussion of the defendant's knowing and voluntary decision to enter a plea: Like the defendant in *Iaea*, Bahadorifar's plea was unmistakably intelligent, and there are absolutely no circumstances, as there were in *Iaea*, indicating it was not also voluntary.

## III.    An Evidentiary Hearing Is Not Necessary

The filing of a Section 2255 petition does not, by itself, obligate the district court to conduct an evidentiary proceeding. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (filing of motion "does not entitle petitioner automatically to a hearing"). Rather, a district court may summarily dismiss a Section 2255 petition where the defendant submits no supporting affidavit or fails to raise "detailed and controverted issues of fact." *Id.* Similarly, where the existing record

14

"conclusively show[s] that the petitioner is entitled to no relief," summary dismissal may be appropriate. *Id.; see also* 28 U.S.C. § 2255; *United States v. Stantini*, 85 F.3d 9, 17 (2d Cir. 1996) (no need for further factual development because defendant failed to raise plausible ineffectiveness claim regarding attorney's performance in plea negotiations or at trial); *Hopkins v. Schillinger*, 866 F.2d 1185, 1211 (10th Cir. 1989) ("Conclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing, as are contentions that in the face of the record are wholly incredible.").

That is the case here where the unsupported, conclusory assertions in Bahadorifar's Petition are flatly, and conclusively, contradicted by the record, including Bahadorifar's plea allocution, both standing alone, and also as supported by sworn declarations submitted by her prior counsel.

## CONCLUSION

For the foregoing reasons, the Petition should be denied without an evidentiary hearing. Because Bahadorifar has not made a substantial showing of the denial of a constitutional right, no certificate of appealability should issue. 28 U.S.C. § 2253(c)(2); *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

Dated:  New York, New York
      April 11, 2025

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York


By:           /s/
      Michael D. Lockard / Jacob H. Gutwillig /
          Matthew J.C. Hellman
      Assistant United States Attorneys
