# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

                              Criminal No. 1:21-CR-430-01-RA

NILOUFAR BAHADORIFAR,

    Defendant.

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO

## 18 U.S.C. § 3582 (c) (1) (A)

Defendant Niloufar Bahadorifar (BOP Register No. 53318-509), proceeding pro se, respectfully moves this Honorable Court for an Order reducing her sentence to time served, or, in the alternative, modifying her sentence to permit her immediate release to begin serving her term of supervised release subject to any conditions the Court deems appropriate.

This motion is brought pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which authorizes district courts to reduce a term of imprisonment when extraordinary and compelling reasons warrant such relief after consideration of the sentencing factors set forth

in 18 U.S.C. § 3553(a) and the applicable policy statements of the United States Sentencing Commission.

In support of this motion, Defendant respectfully submits that her severe and progressively deteriorating medical condition, her complete exhaustion of administrative remedies, her exemplary institutional adjustment, her lack of any prior criminal history, and her demonstrated rehabilitation collectively establish extraordinary and compelling reasons warranting compassionate release. Since her sentencing, Defendant has experienced a dramatic decline in her physical health, including recurrent seizures resulting in loss of consciousness, systemic lupus erythematosus, severe iron-deficiency anemia, uncontrolled hypertension, cardiac abnormalities, hypothyroidism, Long COVID syndrome, significant weight loss, depression, anxiety, and profound physical weakness requiring continuous medical evaluation and specialized care. Multiple treating physicians have concluded that her medical condition has substantially worsened and requires ongoing treatment by neurologists, cardiologists, hematologists, oncologists, and other specialists. They have further advised that she requires close medical supervision and that continued exposure to physical and emotional stress presents a significant risk to her health. These serious medical conditions have progressed well beyond those considered by the Court at the time of sentencing and now present extraordinary circumstances that were neither anticipated nor capable of being fully addressed during the original sentencing proceedings.

This is the rare case in which the purposes of sentencing have largely been fulfilled. Defendant has accepted full responsibility for her conduct, maintained a positive institutional record, and has continued to demonstrate genuine rehabilitation while incarcerated. She poses no danger to the safety of any person or the community, and the continued service of her custodial sentence is

no longer necessary to accomplish the objectives of punishment, deterrence, protection of the public, or rehabilitation. Instead, continued incarceration under her present medical circumstances serves only to increase the risk to her health while limiting her ability to receive the specialized treatment her physicians have determined is medically necessary. For these reasons, Defendant respectfully requests that this Court exercise its authority under 18 U.S.C. § 3582(c)(1)(A) and grant compassionate release.

## 1. INTRODUCTION

COMES NOW Defendant, Niloufar Bahadorifar, Register Number 53318-509, proceeding pro se, and respectfully moves this Honorable Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, for a reduction of her sentence to time served, or in the alternative, for immediate compassionate release subject to any conditions of supervised release the Court deems appropriate.

This motion is based upon extraordinary and compelling circumstances that have arisen during Defendant's incarceration which were neither fully anticipated nor capable of being adequately addressed at the time sentence was imposed. Since reporting to the custody of the Bureau of Prisons, Defendant's physical condition has deteriorated dramatically. She now suffers from multiple serious and progressive medical conditions, including uncontrolled seizure disorder, systemic lupus erythematosus, chronic iron-deficiency anemia, uncontrolled hypertension, cardiac abnormalities requiring specialized evaluation, hypothyroidism, Long COVID syndrome, severe fatigue, cognitive impairment, depression, anxiety, and substantial loss of mobility. Multiple treating physicians have concluded that she requires ongoing treatment by neurologists,

cardiologists, hematologists, oncologists, and other specialists, as well as continuous monitoring that cannot be adequately provided within her present institution.

The medical evidence demonstrates that Defendant's condition has progressed well beyond ordinary chronic illness. Her treating neurologist has documented uncontrolled seizures, recurrent episodes involving loss of consciousness, significant cognitive decline, wheelchair dependence, cardiac complications, lupus, severe anemia, and an estimated loss of approximately eighty percent of her normal functional capacity. The physician further concluded that Defendant requires around-the-clock monitoring and specialized medical care in order to protect both her health and her survival.

Additional treating physicians independently reached similar conclusions. Dr. Hamideh Falsafi documented progressive worsening of Defendant's medical condition, including recurrent seizures with loss of consciousness, severe anemia, hypothyroidism, depression, anxiety, lethargy, shortness of breath, significant weight loss, and the need for urgent evaluation by multiple medical specialists. Dr. Falsafi specifically warned that Defendant should avoid stressful situations because of the substantial risk of collapse and further deterioration.

Likewise, Defendant's oncologist and internist recommended immediate cardiology evaluation, advanced cardiac monitoring, diagnostic imaging, and additional specialty consultations because of persistent shortness of breath, palpitations, abdominal pain, night sweats, and significant weight loss.

These medical findings are further corroborated by records documenting repeated syncopal episodes secondary to seizure disorder, hypertension, severe anemia, emergency medical treatment, and findings that Defendant was medically unstable to perform normal daily activities.

Defendant has fully exhausted the administrative requirements established by 18 U.S.C. § 3582(c)(1)(A). She submitted a request for compassionate release through the Bureau of Prisons, pursued the administrative review process, and was denied relief despite the extensive medical evidence supporting her request.

Congress enacted the First Step Act to permit courts, not solely the Bureau of Prisons to determine whether extraordinary and compelling circumstances justify compassionate release. Since Defendant's sentencing, the United States Sentencing Commission has further expanded the categories supporting compassionate release through Amendment 814 and the revised policy statement contained in U.S.S.G. § 1B1.13, recognizing that serious medical deterioration and the inability of the Bureau of Prisons to adequately provide necessary treatment may constitute extraordinary and compelling reasons warranting relief.

Defendant fully accepts responsibility for the offenses of conviction and does not seek to minimize the seriousness of her conduct. She recognizes the sentence imposed by this Court reflected the seriousness of the offenses, promoted respect for the law, and provided just punishment. Since sentencing, however, the purposes of continued incarceration have been substantially outweighed by her rapidly declining medical condition and the increasing inability of the Bureau of Prisons to provide the level of specialized care necessary to preserve her health and her life.

For these reasons, and for those set forth more fully below, Defendant respectfully requests that this Court exercise the authority granted under 18 U.S.C. § 3582(c)(1)(A), find that extraordinary and compelling reasons warrant relief, and reduce her sentence to time served, or impose such other relief as justice requires.

## II. PROCEDURAL HISTORY AND ADMINISTRATIVE EXHAUSTION

Defendant, Niloufar Bahadorifar, was charged in the above-captioned matter arising from allegations involving violations of the International Emergency Economic Powers Act and related financial offenses. Throughout the proceedings, Defendant accepted responsibility for her conduct, cooperated with the judicial process, and ultimately resolved the case by entering a plea of guilty pursuant to a written plea agreement. From the outset of the proceedings, Defendant demonstrated respect for the judicial process, appeared as required, and accepted responsibility without requiring the Government or the Court to expend unnecessary resources through a lengthy trial. The case proceeded through the ordinary course of federal criminal proceedings, culminating in sentencing before this Honorable Court.

On April 7, 2023, after carefully considering the advisory Sentencing Guidelines, the Presentence Investigation Report, the arguments of counsel, the evidence presented, and the factors set forth in 18 U.S.C. § 3553(a), this Court sentenced Defendant to a term of forty-eight (48) months' imprisonment on each count, to run concurrently, followed by a term of supervised release. The Court also imposed the additional conditions contained in the written Judgment entered in this matter. Defendant accepted the sentence imposed by the Court and has never sought to minimize the seriousness of the offenses for which she was convicted. Instead, she has devoted her period of incarceration to rehabilitation, institutional compliance, and preparing herself for a productive and law-abiding return to society.

At sentencing, this Court was presented with information concerning Defendant's personal history, family circumstances, and existing medical conditions. The sentencing record reflects that the Court thoughtfully weighed those circumstances against the seriousness of the offense

and the statutory sentencing objectives before imposing sentence. The Court also understood that Defendant would receive the benefit of statutory sentence reductions available under federal law, including Good Conduct Time and any applicable First Step Act benefits administered by the Bureau of Prisons. Nothing before the Court at sentencing suggested that Defendant's health would deteriorate to the extraordinary degree documented by her treating physicians during her incarceration. The medical evidence presently before the Court demonstrates a profound and unforeseen progression of multiple serious illnesses that materially distinguishes Defendant's current circumstances from those that existed when sentence was imposed.

Following her designation to the custody of the Bureau of Prisons, Defendant entered federal custody with the intention of complying with every institutional rule and taking advantage of every rehabilitative opportunity available to her. She has consistently attempted to improve herself, comply with institutional requirements, and maintain a positive disciplinary record. Unfortunately, rather than experiencing an improvement in her health, Defendant has suffered a substantial and progressive decline. The medical records submitted in support of this motion document uncontrolled seizures accompanied by loss of consciousness, systemic lupus erythematosus, chronic iron-deficiency anemia, uncontrolled hypertension, hypothyroidism, Long COVID syndrome, cardiac abnormalities requiring specialized evaluation, severe fatigue, depression, anxiety, and significant functional impairment that now limits her ability to perform ordinary daily activities without assistance. These conditions have required repeated medical evaluations by multiple specialists and have continued to worsen despite ongoing treatment.

Recognizing the severity of her deteriorating health, Defendant sought compassionate release through the administrative procedures established by the Bureau of Prisons. Congress, through the First Step Act of 2018, amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates to seek

compassionate release directly from the sentencing court after first presenting the request to the Bureau of Prisons and either exhausting all administrative remedies or allowing thirty days to elapse from the warden's receipt of the request. Defendant complied with these statutory prerequisites.

Specifically, Defendant submitted a written request for compassionate release to the Bureau of Prisons based upon her progressively worsening medical condition and the extraordinary medical circumstances documented by her treating physicians. In that request, Defendant explained that her health had significantly deteriorated during her incarceration and that she required specialized medical treatment beyond that which could reasonably be provided within the correctional environment. She further explained that her multiple serious diagnoses, taken together, presented extraordinary and compelling reasons warranting compassionate release.

The Bureau of Prisons reviewed Defendant's request but ultimately declined to grant compassionate release. Defendant thereafter pursued every level of administrative review available to her in accordance with Bureau of Prisons procedures. Despite presenting substantial medical documentation from multiple treating physicians describing her worsening neurological, cardiovascular, hematological, autoimmune, and endocrine conditions, Defendant received no administrative relief. The Bureau maintained its denial, thereby exhausting the administrative process required under 18 U.S.C. § 3582(c)(1)(A).

Accordingly, Defendant has fully satisfied the exhaustion requirement established by Congress. There is no remaining administrative remedy available that could provide the relief requested in this motion. Because Defendant has complied with every procedural prerequisite imposed by

statute, this Court possesses full authority to consider the merits of her request for compassionate release.

The First Step Act fundamentally altered the compassionate release framework by transferring the responsibility for evaluating extraordinary and compelling circumstances from the Bureau of Prisons to the federal courts. Prior to the enactment of the First Step Act, only the Director of the Bureau of Prisons could file a compassionate release motion on behalf of an inmate, a process that frequently resulted in deserving inmates receiving no meaningful judicial review. Congress amended § 3582(c)(1)(A) specifically to expand judicial authority and to ensure that district courts—not the Bureau of Prisons alone—would determine whether extraordinary and compelling reasons justify a sentence reduction after administrative exhaustion has occurred.

The United States Court of Appeals for the Second Circuit has recognized that district courts possess broad discretion when evaluating compassionate release motions filed after the enactment of the First Step Act. In United States v. Brooker (Zullo), 976 F.3d 228 (2d Cir. 2020), the Second Circuit held that the First Step Act freed district courts to independently determine what constitutes extraordinary and compelling reasons, rather than limiting courts to the narrow categories previously recognized by the Bureau of Prisons or the former version of U.S.S.G. § 1B1.13. The court explained that Congress intended district judges to exercise independent judgment in determining whether a sentence reduction is warranted based upon the unique facts of each individual case.

Likewise, the Second Circuit has repeatedly emphasized that compassionate release requires an individualized assessment of the defendant's current circumstances, including serious medical deterioration, rehabilitation, and the sentencing factors set forth in 18 U.S.C. § 3553(a). See

United States v. Jones, 17 F.4th 371 (2d Cir. 2021) and United States v. Keitt, 21 F.4th 67 (2d Cir. 2021). These decisions recognize that district courts possess broad equitable authority to evaluate the totality of a defendant's circumstances when determining whether extraordinary and compelling reasons justify a reduction in sentence.

The legal landscape became even clearer following the United States Sentencing Commission's adoption of Amendment 814, effective November 1, 2023, which substantially revised U.S.S.G. § 1B1.13. The amended policy statement expressly recognizes that serious medical deterioration, debilitating physical conditions, and circumstances in which an inmate's medical needs cannot be adequately addressed within the correctional environment may constitute extraordinary and compelling reasons warranting compassionate release. The revised Guideline therefore aligns with Congress's intent that courts carefully evaluate whether continued incarceration remains appropriate when a defendant's medical condition has materially changed since sentencing.

This case presents precisely the type of extraordinary circumstances contemplated by Congress and recognized by the Sentencing Commission. Defendant is no longer the same individual who appeared before this Court for sentencing in 2023. Since entering Bureau of Prisons custody, she has experienced significant and objectively documented deterioration in nearly every aspect of her physical health. Multiple independent treating physicians have concluded that she suffers from serious, progressive, and complex medical conditions requiring specialized treatment, continuous monitoring, and multidisciplinary care. Those developments were not before the Court at sentencing and now constitute the factual foundation for the extraordinary and compelling relief requested in this motion.

Because Defendant has fully exhausted every administrative remedy available to her, because the Court possesses full statutory authority to independently evaluate her present circumstances, and because the evidence now before the Court demonstrates profound medical deterioration occurring after sentencing, this motion is properly before the Court for consideration on its merits under 18 U.S.C. § 3582(c)(1)(A).

## III. LEGAL STANDARD

Congress enacted the compassionate release statute to permit federal courts to reduce an otherwise lawful sentence when extraordinary and compelling circumstances demonstrate that continued incarceration is no longer consistent with the interests of justice. The authority to modify a previously imposed sentence is found in 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which authorizes a sentencing court to reduce a term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the Court finds that extraordinary and compelling reasons warrant such a reduction and that the reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.

Prior to enactment of the First Step Act, only the Director of the Bureau of Prisons possessed authority to file compassionate release motions on behalf of federal inmates. In practice, this procedure resulted in very few deserving inmates ever obtaining judicial review of their requests. Recognizing these shortcomings, Congress enacted the First Step Act to expand access to compassionate release by allowing inmates, after exhausting administrative remedies, to file motions directly with the sentencing court. In doing so, Congress fundamentally altered the compassionate release process by placing the responsibility for evaluating extraordinary and compelling circumstances where it has traditionally belonged — with the federal judiciary.

The Second Circuit recognized this significant change in United States v. Brooker (Zullo), 976 F.3d 228 (2d Cir. 2020). In Brooker, the Court held that district courts possess broad discretion to determine what constitutes extraordinary and compelling reasons for compassionate release and are no longer limited by the narrow categories previously identified by the Bureau of Prisons. The Second Circuit explained that the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." Id. at 237. That decision makes clear that federal courts are not constrained by outdated administrative interpretations but instead must independently evaluate the totality of each defendant's circumstances.

The Second Circuit has consistently reaffirmed this broad judicial authority. In United States v. Keitt, 21 F.4th 67 (2d Cir. 2021), the Court explained that once administrative exhaustion has been satisfied, the district court's analysis generally proceeds in two stages. First, the Court determines whether extraordinary and compelling reasons justify relief. Second, the Court evaluates whether a sentence reduction remains consistent with the sentencing considerations set forth in 18 U.S.C. § 3553(a). The Court emphasized that district judges possess substantial discretion in balancing these considerations based upon the individualized facts of each case.

Similarly, in United States v. Jones, 17 F.4th 371 (2d Cir. 2021), the Second Circuit reiterated that compassionate release requires a holistic assessment of the defendant's present circumstances rather than a mechanical application of any single factor. The Court recognized that medical deterioration, rehabilitation, family circumstances, and other equitable considerations may collectively establish extraordinary and compelling reasons warranting relief when viewed in their entirety.

Congress further directed the United States Sentencing Commission to promulgate policy statements governing compassionate release. Effective November 1, 2023, the Commission adopted Amendment 814, substantially revising U.S.S.G. § 1B1.13 to reflect the changes enacted by the First Step Act. The amended Guideline expressly recognizes that district courts may consider a broad range of extraordinary and compelling circumstances, including serious medical conditions, deteriorating physical health, the inability of a correctional institution to adequately provide necessary medical treatment, advanced functional impairment, and combinations of circumstances that, when considered together, justify compassionate release.

The revised Guideline specifically acknowledges that a defendant suffering from a serious physical or medical condition may qualify for compassionate release where that condition substantially diminishes the defendant's ability to provide self-care within the correctional environment or where specialized treatment is unavailable or inadequate. The amended policy statement also recognizes that progressive deterioration resulting from aging or chronic illness, debilitating neurological disorders, severe functional impairment, and other serious medical conditions may constitute extraordinary and compelling reasons when continued incarceration no longer serves the purposes of sentencing.

The Commission's revisions are particularly significant because they recognize that compassionate release should not be limited to terminal illness. Rather, courts are encouraged to evaluate whether the defendant's overall medical condition, prognosis, functional limitations, and treatment needs demonstrate that continued imprisonment has become inconsistent with justice and with the objectives underlying federal sentencing. The amended Guideline reflects Congress's intent that compassionate release remain a flexible, individualized remedy capable of

addressing exceptional circumstances that could not reasonably have been anticipated at sentencing.

The statutory sentencing factors contained in 18 U.S.C. § 3553(a) remain an essential component of the Court's analysis. Even where extraordinary and compelling reasons exist, the Court must determine whether a sentence reduction remains consistent with the goals of sentencing, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for just punishment, deterrence, protection of the public, promotion of respect for the law, and the provision of necessary medical care. Importantly, § 3553(a) expressly directs courts to consider the need "to provide the defendant with needed medical care... in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). That factor assumes particular significance where, as here, multiple treating physicians have concluded that Defendant requires specialized neurological, cardiovascular, hematological, rheumatological, endocrine, and rehabilitative care beyond that ordinarily available within the correctional environment.

The Court must also consider Defendant's post-sentencing conduct. Congress has recognized that rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. See 28 U.S.C. § 994(t). Nevertheless, rehabilitation remains an important consideration when evaluated alongside other extraordinary circumstances. Courts throughout the Second Circuit have consistently recognized that evidence of rehabilitation, institutional adjustment, educational programming, disciplinary compliance, and demonstrated acceptance of responsibility significantly informs the Court's analysis under both the extraordinary-and-compelling inquiry and the § 3553(a) factors.

In this case, Defendant does not rely upon any single circumstance in isolation. Rather, this motion presents an extraordinary convergence of compelling factors that collectively justify relief. Since sentencing, Defendant has experienced a profound and objectively documented deterioration in her physical health. Multiple treating physicians have diagnosed serious neurological, cardiovascular, autoimmune, hematological, endocrine, and psychiatric conditions that have progressively worsened during her incarceration. The medical evidence demonstrates recurrent seizures with loss of consciousness, systemic lupus erythematosus, chronic anemia, uncontrolled hypertension, hypothyroidism, Long COVID syndrome, cardiac abnormalities, severe fatigue, cognitive decline, depression, anxiety, substantial functional impairment, and the need for continuous monitoring and specialized multidisciplinary care. These conditions are documented by independent treating specialists and were not before the Court in their present severity at the time sentence was imposed.

When considered together with Defendant's acceptance of responsibility, lack of criminal history, positive institutional adjustment, exhaustion of administrative remedies, and comprehensive release plan, these circumstances satisfy the extraordinary and compelling standard contemplated by Congress, recognized by the Second Circuit, and codified in the revised U.S.S.G. § 1B1.13. Continued incarceration under these circumstances no longer advances the purposes of sentencing. Instead, it substantially impairs Defendant's ability to obtain the medical treatment necessary to preserve her health and quality of life while providing little additional benefit in terms of punishment, deterrence, or protection of the public.

Accordingly, this Court possesses both the statutory authority and the equitable discretion to reduce Defendant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth

below, the extraordinary and compelling medical evidence presented in this case, together with the applicable sentencing factors, strongly support the granting of compassionate release.

## IV. EXTRAORDINARY AND COMPELLING REASONS UNDER THE AMENDED U.S.S.G. § 1B1.13

The authority granted to this Court under 18 U.S.C. § 3582(c)(1)(A) requires a determination that "extraordinary and compelling reasons" warrant a reduction in sentence. In making that determination, Congress directed sentencing courts to consider the applicable policy statements issued by the United States Sentencing Commission. Effective November 1, 2023, the Sentencing Commission substantially revised U.S.S.G. § 1B1.13 through Amendment 814, expanding and clarifying the circumstances under which compassionate release may be granted. These amendments reflect Congress's intent that compassionate release remain a flexible and equitable remedy capable of addressing the unique circumstances of individual defendants whose conditions materially change after sentencing.

Unlike the earlier version of the Guideline, the amended policy statement expressly recognizes that district courts possess broad authority to evaluate the totality of a defendant's circumstances when determining whether extraordinary and compelling reasons exist. The revised Guideline acknowledges that serious medical deterioration, debilitating physical impairment, progressive illness, and circumstances demonstrating that an inmate requires specialized medical treatment may justify compassionate release when continued incarceration no longer serves the purposes of sentencing.

The revised policy statement further recognizes that a defendant may qualify for compassionate release where the defendant suffers from a serious physical or medical condition that substantially diminishes the ability to provide self-care within the correctional environment or where the defendant's health has significantly deteriorated because of the aging process or the progression of chronic disease. The Sentencing Commission further recognized that compassionate release is appropriate where an inmate's medical needs cannot be adequately addressed through the ordinary course of institutional treatment or where continued incarceration substantially impairs the defendant's ability to receive medically necessary care.

The circumstances presented in this case satisfy each of those principles.

Since the date sentence was imposed, Defendant's health has deteriorated dramatically. The evidence before the Court does not concern a single diagnosis or a temporary medical condition. Rather, the medical records document progressive deterioration involving numerous serious illnesses affecting multiple body systems simultaneously. Defendant now suffers from uncontrolled seizure disorder with recurrent loss of consciousness, systemic lupus erythematosus, chronic iron-deficiency anemia, uncontrolled hypertension, cardiac abnormalities requiring specialized evaluation, hypothyroidism, Long COVID syndrome, severe fatigue, depression, anxiety, cognitive decline, and profound physical weakness that has substantially diminished her functional capacity. Multiple treating physicians have independently concluded that these conditions continue to worsen despite ongoing treatment and require continuous multidisciplinary medical care.

The Sentencing Commission specifically recognized that compassionate release may be appropriate where a defendant suffers from a serious medical condition that substantially

diminishes the ability to function within the correctional environment. Defendant's physicians have documented approximately an eighty-percent loss of functional capacity, recurrent seizures with loss of consciousness, significant mobility limitations, severe fatigue, and increasing dependence upon others for assistance with daily activities. These findings demonstrate a profound level of physical deterioration that substantially exceeds ordinary chronic illness and falls squarely within the circumstances contemplated by the amended Guideline.

The amended policy statement also recognizes that the Court may consider whether a defendant requires specialized medical treatment that cannot be effectively provided within the correctional environment. Defendant's treating physicians consistently recommend evaluation and treatment by neurologists, cardiologists, hematologists, rheumatologists, endocrinologists, psychiatrists, and other specialists because of the complexity of her medical condition. The need for ongoing multidisciplinary care reflects the extraordinary nature of Defendant's illnesses and demonstrates that her medical needs extend well beyond routine institutional medical treatment.

Importantly, the Sentencing Commission did not intend that district courts evaluate each diagnosis in isolation. Rather, the amended Guideline contemplates consideration of the defendant's overall medical condition and the cumulative effect of multiple serious illnesses. When viewed collectively, Defendant's uncontrolled neurological disorder, autoimmune disease, cardiovascular abnormalities, hematological disorder, endocrine dysfunction, Long COVID syndrome, psychiatric conditions, and severe functional impairment create a level of medical complexity that is substantially greater than the sum of its individual diagnoses. The interaction among these illnesses has produced a dramatic decline in Defendant's overall health that continues to worsen despite ongoing treatment.

The extraordinary nature of Defendant's circumstances is further demonstrated by the remarkable consistency among the independent medical opinions submitted in support of this motion. Multiple physicians evaluating Defendant from different medical specialties have reached substantially the same conclusion that Defendant's condition has progressively deteriorated, that she requires continuing treatment by numerous specialists, and that close medical supervision is essential because of the significant risks associated with her neurological and cardiovascular disorders. The consistency of these independent medical evaluations provides compelling objective evidence that Defendant's present condition is both genuine and severe.

The Court should also consider that the medical deterioration now presented was not before the Court at the time of sentencing. Although the Court was aware that Defendant experienced certain health issues before sentencing, the present record documents a dramatic progression that has fundamentally altered her physical condition. Compassionate release exists precisely to address circumstances in which events occurring after sentencing significantly change the balance of considerations that originally supported the sentence imposed.

Moreover, the amended policy statement expressly preserves the Court's ability to consider the totality of the circumstances presented in each individual case. Defendant respectfully submits that this case presents precisely the type of exceptional circumstances contemplated by Congress and the Sentencing Commission. Her extraordinary medical deterioration, combined with her acceptance of responsibility, exemplary institutional adjustment, lack of criminal history, successful rehabilitation, and comprehensive release plan, establish compelling equitable grounds supporting compassionate release.

This Court's responsibility is not limited to determining whether Defendant suffers from serious medical conditions. Rather, the Court must determine whether continued incarceration remains consistent with the purposes of sentencing in light of Defendant's present circumstances. The amended U.S.S.G. § 1B1.13 recognizes that where a defendant's health has deteriorated to the point that continued incarceration no longer meaningfully advances those objectives, compassionate release is an appropriate exercise of the Court's discretion.

Accordingly, Defendant respectfully submits that the extensive medical evidence presented in this motion satisfies the requirements of 18 U.S.C. § 3582(c)(1)(A) and the amended U.S.S.G. § 1B1.13. The Court should therefore conclude that extraordinary and compelling reasons exist and proceed to evaluate the specific medical evidence demonstrating the extent of Defendant's deterioration and the necessity of compassionate release.

## V. EXTRAORDINARY AND COMPELLING REASONS WARRANT A REDUCTION IN SENTENCE

The extraordinary and compelling circumstances presented in this case are not based upon a single diagnosis or isolated medical event. Rather, they arise from the cumulative effect of numerous serious, chronic, progressive, and medically documented illnesses that have substantially deteriorated during Defendant's incarceration and have significantly diminished her physical functioning, independence, and quality of life. When considered individually, each of these medical conditions presents legitimate health concerns. When considered collectively, however, they paint the unmistakable picture of a woman whose physical condition has deteriorated to a degree far beyond what existed at the time of sentencing and whose continued incarceration no longer serves the interests of justice.

At the time this Court imposed sentence, it carefully considered Defendant's personal history, characteristics, and known medical conditions. The Court appropriately balanced those considerations against the seriousness of the offenses and the statutory purposes of sentencing under 18 U.S.C. § 3553(a). Since that time, however, Defendant's health has undergone a dramatic and unforeseen decline. The progression of her illnesses has transformed what were once manageable medical concerns into multiple disabling conditions requiring continuous monitoring, specialized medical intervention, and multidisciplinary treatment from physicians in several medical specialties. These developments fundamentally alter the compassionate release analysis because they represent extraordinary circumstances that did not exist in their present severity when sentence was imposed.

The medical evidence submitted with this motion is extensive, objective, and remarkably consistent. Defendant's treating physicians independently document progressive deterioration affecting nearly every major body system. Rather than conflicting with one another, these medical opinions corroborate one another and collectively establish that Defendant suffers from multiple serious illnesses requiring care that extends beyond routine institutional medical treatment.

Defendant's primary treating physician, Dr. Ray Salari, has documented perhaps the most comprehensive assessment of Defendant's current medical condition. Dr. Salari reports that Defendant suffers from uncontrolled seizure disorder with recurrent episodes involving loss of consciousness, systemic lupus erythematosus, uncontrolled hypertension, chronic iron-deficiency anemia, cardiac abnormalities requiring specialized evaluation, hypothyroidism, Long COVID syndrome, severe fatigue, chronic weakness, depression, anxiety, and profound physical deterioration. Dr. Salari further concludes that Defendant has experienced approximately an

eighty percent loss of her normal functional capacity and now requires continuous medical supervision due to the progressive nature of her illnesses. According to Dr. Salari, Defendant's neurological condition places her at constant risk of falls, injury, and further neurological decline, while her cardiac abnormalities present additional concerns requiring immediate evaluation by specialists. Dr. Salari specifically recommends treatment by neurologists, cardiologists, hematologists, rheumatologists, endocrinologists, and other medical specialists because of the complexity and severity of Defendant's condition.

Perhaps most concerning are Defendant's recurrent seizures. The medical records demonstrate that these seizures are not isolated events but an ongoing neurological disorder that has progressed during her incarceration. Defendant has experienced repeated episodes involving loss of consciousness, collapse, confusion, and significant neurological impairment. These episodes expose her to continual risk of traumatic injury while simultaneously limiting her ability to independently perform routine daily activities. The unpredictable nature of uncontrolled seizure activity substantially interferes with every aspect of Defendant's daily life and requires close medical observation that is difficult to provide consistently within a correctional institution.

Defendant's diagnosis of systemic lupus erythematosus further complicates her overall medical condition. Lupus is a chronic autoimmune disease capable of affecting multiple organ systems simultaneously, including the cardiovascular, neurological, renal, musculoskeletal, and hematological systems. The disease frequently progresses unpredictably, causing periods of severe inflammation, debilitating fatigue, joint pain, cognitive dysfunction, and damage to vital organs. When considered together with Defendant's seizure disorder, chronic anemia, hypertension, and cardiac abnormalities, lupus significantly increases the complexity of her

medical care and requires coordinated treatment by multiple specialists familiar with autoimmune disease.

The medical evidence further establishes that Defendant suffers from severe chronic iron-deficiency anemia. Treating physicians have repeatedly documented worsening anemia accompanied by profound fatigue, generalized weakness, dizziness, decreased exercise tolerance, and diminished physical functioning. Chronic anemia also exacerbates Defendant's cardiac symptoms, contributes to shortness of breath, and further increases the likelihood of syncope and falls. The interaction between Defendant's anemia and her other medical conditions creates a cumulative level of impairment substantially greater than any individual diagnosis considered separately.

Defendant's cardiovascular condition presents an additional and equally serious concern. Medical evaluations have documented uncontrolled hypertension, abnormal cardiac findings, palpitations, chest discomfort, and persistent shortness of breath requiring specialized cardiology evaluation. Physicians have recommended advanced cardiac monitoring, diagnostic imaging, and continued follow-up with cardiovascular specialists because of concerns that Defendant may be suffering from underlying cardiac disease requiring prompt diagnosis and treatment. Left untreated or inadequately monitored, these cardiac abnormalities significantly increase Defendant's risk of stroke, heart failure, arrhythmias, and sudden cardiac events.

Compounding these already serious medical conditions is Defendant's diagnosis of Long COVID syndrome. Her physicians describe persistent fatigue, generalized weakness, cognitive impairment, exercise intolerance, and ongoing respiratory complaints that have continued long after the acute phase of infection. Long COVID has emerged as a chronic medical condition

capable of producing prolonged neurological, cardiovascular, pulmonary, and systemic complications. In Defendant's case, these symptoms further diminish her functional capacity and substantially impair her ability to recover from her other illnesses.

Defendant also suffers from hypothyroidism, depression, and anxiety, each of which independently requires ongoing medical management. These conditions not only affect Defendant's emotional well-being but also complicate treatment of her physical illnesses by contributing to fatigue, cognitive impairment, decreased concentration, sleep disturbances, and diminished overall functioning. Her treating physicians have specifically observed that physical and emotional stress significantly worsen her medical condition and have recommended that she avoid stressful environments whenever possible.

Perhaps most compelling is the remarkable consistency among Defendant's treating physicians. Although each physician evaluated Defendant from a different specialty perspective, every provider reached substantially the same conclusion: Defendant's health has significantly deteriorated, she suffers from multiple serious progressive illnesses, and she requires specialized medical care that extends well beyond routine institutional treatment. None of the physicians characterize her illnesses as temporary or minor. Rather, each describes a patient experiencing ongoing medical decline requiring comprehensive, multidisciplinary management.

The seriousness of Defendant's condition is further demonstrated by documented episodes of collapse, loss of consciousness, emergency medical evaluations, severe functional impairment, and recommendations for continuous monitoring. Medical records indicate that Defendant has reached the point where ordinary daily activities have become increasingly difficult because of weakness, fatigue, neurological symptoms, and cardiovascular instability. This level of

impairment is precisely the type of serious physical deterioration contemplated by the amended compassionate release policy statement contained in U.S.S.G. § 1B1.13.

The Sentencing Commission's 2023 amendments recognize that extraordinary and compelling reasons exist where a defendant suffers from serious physical deterioration, debilitating medical conditions, or circumstances demonstrating that necessary medical treatment cannot be adequately provided within the correctional setting. Defendant's circumstances satisfy each of those considerations. Her illnesses are progressive, objectively documented by multiple specialists, and have substantially diminished her ability to function independently. Moreover, the complexity of her medical needs requires coordinated treatment by neurologists, cardiologists, rheumatologists, hematologists, endocrinologists, and other specialists whose ongoing involvement is essential to managing her condition.

Defendant does not suggest that the Bureau of Prisons has intentionally ignored her medical needs. Rather, the issue before the Court is whether continued incarceration remains appropriate where the totality of Defendant's medical condition has progressed to the point that the specialized care she requires is more effectively provided outside the institutional environment. Compassionate release exists precisely to address those rare situations in which the balance between punishment and humanity shifts because of extraordinary changes occurring after sentencing.

The evidence before the Court demonstrates that Defendant's present medical condition bears little resemblance to the circumstances existing when sentence was imposed. The progression of her illnesses has fundamentally altered her physical condition, substantially diminished her quality of life, and significantly increased the medical complexity of her care. When viewed

collectively, Defendant's uncontrolled seizure disorder, systemic lupus erythematosus, chronic anemia, uncontrolled hypertension, cardiac abnormalities, hypothyroidism, Long COVID syndrome, depression, anxiety, profound fatigue, functional impairment, and need for continuous multidisciplinary treatment unquestionably constitute extraordinary and compelling reasons warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the amended provisions of U.S.S.G. § 1B1.13.

Accordingly, the Court should conclude that Defendant has satisfied the threshold requirement for compassionate release and proceed to consider whether the factors set forth in 18 U.S.C. § 3553(a) likewise supports a reduction in sentence.

## VI. THE BUREAU OF PRISONS CANNOT PROVIDE THE SPECIALIZED MEDICAL CARE REQUIRED BY DEFENDANT'S RAPIDLY DETERIORATING MEDICAL CONDITION

Compassionate release is not limited to circumstances in which an inmate suffers from a terminal illness or receives no medical care whatsoever. Rather, Congress and the United States Sentencing Commission have recognized that compassionate release is appropriate when a defendant suffers from serious, progressive medical conditions that substantially diminish the ability to function within the correctional environment or when the level of specialized treatment required cannot be adequately provided during continued incarceration. Defendant respectfully submits that her circumstances fall squarely within those principles.

This motion is not intended to criticize the medical professionals employed by the Bureau of Prisons or to suggest that institutional medical staff have acted in bad faith. The physicians and

healthcare providers employed by the Bureau perform an important public service under difficult circumstances and routinely provide care to thousands of inmates throughout the federal prison system. The issue before this Court is not whether medical personnel have attempted to treat Defendant, but whether the correctional environment is capable of providing the highly specialized, continuous, multidisciplinary medical care that Defendant's treating physicians have concluded is now medically necessary.

The objective medical evidence establishes that Defendant's health has deteriorated to a degree requiring coordinated treatment by numerous medical specialists. Unlike an inmate suffering from a single chronic condition that can be managed through routine institutional care, Defendant now presents with multiple serious illnesses affecting numerous body systems simultaneously. Her medical condition requires ongoing neurological evaluation for recurrent seizures, cardiovascular monitoring for uncontrolled hypertension and cardiac abnormalities, hematological treatment for chronic iron-deficiency anemia, rheumatological management of systemic lupus erythematosus, endocrinological treatment for hypothyroidism, pulmonary evaluation associated with Long COVID syndrome, psychiatric care for depression and anxiety, and continued diagnostic evaluation for persistent symptoms affecting multiple organ systems. The complexity of these overlapping conditions makes coordinated specialty care essential to preserving Defendant's health.

The records submitted in support of this motion demonstrate that Defendant's treating physicians have consistently recommended precisely that level of multidisciplinary care. Dr. Ray Salari concluded that Defendant suffers from uncontrolled seizures, systemic lupus erythematosus, chronic anemia, uncontrolled hypertension, cardiac abnormalities, Long COVID syndrome, hypothyroidism, severe fatigue, depression, anxiety, and significant physical deterioration

resulting in approximately an eighty percent loss of her functional capacity. Dr. Salari further determined that Defendant requires continuing evaluation and treatment by neurologists, cardiologists, hematologists, rheumatologists, endocrinologists, and other specialists because of the complexity and progression of her illnesses. Most significantly, Dr. Salari concluded that Defendant requires close medical supervision due to the ongoing risk created by her neurological and cardiovascular conditions.

Dr. Hamideh Falsafi independently reached similar conclusions after evaluating Defendant's worsening medical condition. Dr. Falsafi documented recurrent seizures accompanied by loss of consciousness, chronic anemia, hypothyroidism, depression, anxiety, profound lethargy, generalized weakness, and continuing deterioration despite ongoing treatment. Dr. Falsafi further emphasized that Defendant should avoid stressful environments because of the significant risk that additional physical or emotional stress could precipitate further medical decline. Such recommendations underscore the fragile nature of Defendant's present condition and the need for an environment capable of providing comprehensive medical oversight.

Defendant's treating internists and oncologists likewise recommended immediate cardiology consultation, advanced cardiac monitoring, diagnostic imaging, and additional specialty evaluations because of persistent shortness of breath, palpitations, unexplained weight loss, abdominal pain, and other symptoms raising concern for serious underlying cardiovascular and systemic disease. These recommendations reflect not isolated medical opinions but rather a consistent consensus among multiple independent physicians that Defendant's condition requires ongoing evaluation by specialists whose expertise extends beyond ordinary primary medical care.

The seriousness of Defendant's medical condition is further demonstrated by repeated episodes of seizures, syncope, profound fatigue, significant weakness, and substantial impairment in her ability to perform ordinary daily activities. Medical records indicate that Defendant has experienced recurrent episodes involving collapse and loss of consciousness, placing her at continual risk of traumatic injury. Her physicians have documented severe limitations in her functional capacity and have expressed concern regarding her ability to safely care for herself without close medical observation. These findings are entirely consistent with the progressive neurological and autoimmune disorders from which she suffers and demonstrate that her medical needs continue to increase rather than stabilize.

The cumulative effect of Defendant's medical conditions substantially exceeds the treatment needs associated with any one diagnosis. Each illness exacerbates the others. Her chronic anemia contributes to fatigue, dizziness, shortness of breath, and reduced oxygen delivery throughout the body. Her lupus increases systemic inflammation and may affect multiple organ systems, complicating treatment of her neurological and cardiovascular disorders. Her seizure disorder exposes her to repeated episodes of loss of consciousness, increasing the risk of injury while simultaneously complicating management of her other illnesses. Long COVID syndrome contributes additional fatigue, weakness, cognitive impairment, and respiratory symptoms. Depression and anxiety further complicate treatment by affecting sleep, concentration, and overall physical functioning. The interaction of these conditions creates a level of medical complexity that requires coordinated care among multiple specialists rather than isolated treatment of individual symptoms.

The amended policy statement contained in U.S.S.G. § 1B1.13 recognizes that compassionate release may be appropriate where a defendant suffers from serious physical deterioration or

requires medical treatment that cannot be adequately provided within the correctional setting. Defendant respectfully submits that her circumstances fall squarely within that guidance. The issue is not whether some medical care is available within the Bureau of Prisons. Rather, the question is whether Defendant's extraordinary combination of progressive neurological, cardiovascular, autoimmune, hematological, endocrine, and psychiatric conditions can be managed in the comprehensive and coordinated manner recommended by every treating physician who has evaluated her.

Outside the correctional environment, Defendant will have the ability to establish continuous care with the specialists identified by her physicians, maintain regular follow-up appointments, receive advanced diagnostic testing as recommended, obtain timely adjustments to medications, participate in physical rehabilitation as appropriate, and benefit from family support during treatment. The continuity of care available in the community offers a substantially greater opportunity to stabilize Defendant's health and prevent further deterioration than continued incarceration.

Congress specifically directed sentencing courts to consider "the need ... to provide the defendant with needed medical care ... in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Under the extraordinary circumstances presented here, the most effective manner of providing Defendant with the specialized treatment her physicians unanimously recommend is through compassionate release, where she may obtain comprehensive multidisciplinary medical care under the supervision of her treating specialists while remaining subject to the conditions of supervised release imposed by this Court.

Defendant respectfully submits that continued incarceration under these circumstances no longer advances the purposes of sentencing. Instead, it significantly limits her ability to obtain the comprehensive neurological, cardiovascular, rheumatological, hematological, endocrinological, psychiatric, and rehabilitative care that her treating physicians have determined is medically necessary. Compassionate release would not diminish the seriousness of the sentence imposed by this Court. Rather, it would permit Defendant to receive the specialized treatment necessary to preserve her health while continuing to serve the remainder of her sentence under the supervision of the United States Probation Office.

For these reasons, the objective medical evidence overwhelmingly demonstrates that Defendant's present medical condition has progressed beyond the level of care reasonably contemplated within the correctional environment. The inability to provide the comprehensive multidisciplinary treatment required by Defendant's rapidly deteriorating health constitutes an additional extraordinary and compelling reason supporting compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the amended U.S.S.G. § 1B1.13.

## VII. POST-SENTENCING REHABILITATION AND EXEMPLARY INSTITUTIONAL ADJUSTMENT

One of the principal objectives of the federal correctional system is rehabilitation. Congress recognized through the First Step Act that incarceration should not merely punish, but should also provide individuals with an opportunity to demonstrate personal growth, accept responsibility, and prepare themselves for successful reintegration into society. Throughout my incarceration, I have embraced that responsibility. I have accepted full responsibility for my

conduct, complied with institutional rules, and made every effort to use my time in custody in a productive and meaningful manner.

From the beginning of my sentence, I understood that my incarceration presented an opportunity to reflect upon my actions and to become a better person. Rather than allowing my circumstances to define me, I have remained committed to improving myself despite the increasingly serious medical challenges I have faced. I have conducted myself with dignity, respect for institutional authority, and a sincere desire to demonstrate that I am capable of returning to society as a productive and law-abiding citizen.

My institutional adjustment has reflected that commitment. I have maintained a positive disciplinary record, complied with the rules of the Bureau of Prisons, and participated in available programming to the extent permitted by my declining health. As my medical condition progressively worsened, my ability to participate in certain institutional activities became increasingly limited. Nevertheless, I continued to cooperate with institutional staff, remain compliant with medical treatment, and conduct myself in a manner consistent with the expectations placed upon me as a federal inmate.

Rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t) makes that clear. However, Congress also recognized that rehabilitation remains an important equitable consideration when viewed together with other extraordinary circumstances. Here, my rehabilitation is not offered as the sole basis for relief. Rather, it demonstrates that despite experiencing severe physical deterioration, I have continued to accept responsibility, comply with institutional requirements, and prepare myself for successful reintegration into society. My conduct while incarcerated demonstrates that I have

used my sentence for the very purpose Congress intended to rehabilitate myself and reduce the likelihood of future misconduct.

Equally important, I have no history of violence and no significant criminal history preceding this case. The offenses for which I was convicted were nonviolent financial offenses. Nothing in my institutional record suggests that I have become a danger while incarcerated. To the contrary, my conduct reflects maturity, accountability, and a sincere commitment to living a lawful life upon my release.

The extraordinary medical circumstances now before the Court further reinforce the significance of my rehabilitation. Despite living with uncontrolled seizures, systemic lupus erythematosus, chronic anemia, Long COVID syndrome, cardiac abnormalities, and numerous additional serious illnesses, I have continued to cooperate with institutional staff and comply with every aspect of my sentence. My conduct reflects genuine rehabilitation rather than mere compliance with institutional rules.

For these reasons, my post-sentencing rehabilitation and exemplary institutional adjustment strongly support the granting of compassionate release when considered together with the extraordinary and compelling medical circumstances discussed above.

## VIII. APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS

After determining that extraordinary and compelling reasons exist, the Court must consider whether a reduction in sentence remains consistent with the factors set forth in 18 U.S.C. § 3553(a). Those factors continue to support compassionate release in this case.

The nature and circumstances of my offenses were serious, and I do not seek to minimize my conduct or avoid responsibility for the sentence imposed by this Court. I recognize that my actions warranted punishment and that the sentence imposed reflected the Court's careful consideration of the applicable Sentencing Guidelines and the statutory purposes of sentencing. I have never attempted to diminish the seriousness of the offenses or shift responsibility to anyone else.

At the same time, the Court is now presented with circumstances fundamentally different from those existing at sentencing. Compassionate release is not intended to revisit whether the original sentence was appropriate. Rather, it recognizes that extraordinary developments occurring after sentencing may alter the balance of the § 3553(a) factors. The profound deterioration of my physical health is precisely the type of unforeseen circumstance Congress contemplated when authorizing compassionate release.

My history and characteristics strongly favor relief. Prior to this case, I had no significant criminal history. I have maintained strong family support throughout these proceedings and throughout my incarceration. I have accepted responsibility, demonstrated rehabilitation, and maintained a positive institutional adjustment despite experiencing increasingly debilitating medical conditions. My present physical condition is dramatically different from the individual who appeared before this Court at sentencing.

Continued incarceration is no longer necessary to protect the public. I have never been convicted of a violent offense, nor have I engaged in conduct suggesting a propensity for violence. My current medical condition significantly limits my physical abilities, and multiple physicians have documented severe functional impairment requiring ongoing medical supervision. Nothing about my present circumstances suggests that I pose any danger to any individual or to the community.

The need for deterrence has likewise been substantially satisfied. I have served a significant portion of the sentence imposed by this Court while enduring extraordinary physical suffering resulting from progressive medical deterioration. The sentence I have served has fully impressed upon me the seriousness of my conduct, and there is every reason to believe that I will remain a law-abiding citizen upon release.

Perhaps most importantly, 18 U.S.C. § 3553(a)(2)(D) directs sentencing courts to consider the need to provide defendants with necessary medical care in the most effective manner. The undisputed medical evidence demonstrates that my current health requires coordinated treatment by numerous specialists and continuous monitoring that can be more effectively provided outside the correctional setting. Compassionate release would therefore better accomplish one of the statutory objectives expressly identified by Congress.

When considered as a whole, the § 3553(a) factors no longer support continued incarceration. Rather, they support allowing me to continue serving my sentence under the supervision of the United States Probation Office while obtaining the specialized medical treatment necessary to preserve my health.

## IX. PROPOSED RELEASE PLAN

If compassionate release is granted, I have a stable and comprehensive release plan that will permit me to transition safely into the community while continuing to comply with every condition imposed by this Court.

Upon release, I will reside with my family in a stable residence where I will have continuous support and assistance with my daily medical needs. My family has remained steadfast throughout these proceedings and is fully prepared to provide transportation, assistance with medical appointments, medication management, and any additional care that may become necessary because of my medical condition.

I will immediately resume treatment with my treating physicians and establish continuing care with the specialists who have recommended ongoing neurological, cardiovascular, hematological, rheumatological, endocrinological, and psychiatric treatment. I will comply with all prescribed medications, recommended therapies, diagnostic testing, and follow-up appointments to ensure the most effective management of my medical conditions.

I will fully comply with every condition of supervised release imposed by this Court and with every directive of the United States Probation Office. I understand the seriousness of my obligations and remain committed to demonstrating through my conduct that the confidence placed in me by this Court has been well founded.

## X. CONCLUSION

This motion does not ask the Court to reconsider the sentence it imposed. At the time of sentencing, the Court carefully weighed the seriousness of the offense, the advisory Sentencing Guidelines, the statutory sentencing factors, and my personal circumstances. Based upon the information then available, the sentence imposed was lawful and appropriate.

Today, however, the Court is presented with a fundamentally different case. Since sentencing, my health has deteriorated dramatically. Multiple treating physicians have independently documented progressive neurological, cardiovascular, autoimmune, hematological, endocrine, and psychiatric conditions that have substantially diminished my physical functioning and require specialized multidisciplinary care. These developments were not before the Court at sentencing and now present extraordinary and compelling circumstances that Congress specifically authorized district courts to consider through compassionate release.

I have fully exhausted every available administrative remedy. I have accepted responsibility for my conduct, demonstrated rehabilitation, maintained a positive institutional adjustment, and prepared a comprehensive release plan. I pose no danger to the community, and continued incarceration no longer meaningfully advances the purposes of sentencing. Instead, it limits my ability to obtain the specialized medical treatment necessary to preserve my health and quality of life.

The First Step Act entrusts district courts with the responsibility of determining when justice, compassion, and the purposes of sentencing warrant relief. This is one of those exceptional cases. The totality of the evidence demonstrates that extraordinary and compelling reasons now justify a reduction in sentence. Granting compassionate release would not diminish the

seriousness of my offense or undermine respect for the law. Rather, it would faithfully implement the authority Congress provided under 18 U.S.C. § 3582(c)(1)(A) and recognize that the purposes of my continued incarceration have been substantially fulfilled.

For all of these reasons, I respectfully request that this Court reduce my sentence to time served, permit me to begin serving my previously imposed term of supervised release under such conditions as the Court deems appropriate, and grant such other and further relief as justice may require.

## XI. PRAYER FOR RELIEF

WHEREFORE, Defendant, Niloufar Bahadorifar, respectfully requests that this Honorable Court grant this Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and reduce her sentence to time served, or, in the alternative, modify her sentence to permit her immediate release to begin serving the previously imposed term of supervised release under such conditions as this Court deems appropriate.

Defendant respectfully requests that the Court find that extraordinary and compelling reasons exist based upon the significant deterioration of her medical condition following sentencing. The overwhelming medical evidence submitted in support of this motion demonstrates that Defendant now suffers from numerous serious, progressive, and debilitating medical conditions, including uncontrolled seizure disorder with recurrent loss of consciousness, systemic lupus erythematosus, chronic iron-deficiency anemia, uncontrolled hypertension, cardiac abnormalities requiring specialized evaluation, hypothyroidism, Long COVID syndrome, severe fatigue, depression, anxiety, and substantial functional impairment. Multiple treating physicians have

independently concluded that Defendant requires continuous monitoring and coordinated treatment from numerous medical specialists in order to adequately address the complexity of her condition. The cumulative effect of these illnesses now constitutes extraordinary and compelling circumstances within the meaning of 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13, as amended effective November 1, 2023.

Defendant further respectfully requests that this Court determine that she has fully satisfied the administrative exhaustion requirements established by Congress. Prior to filing this motion, Defendant diligently pursued every administrative remedy available through the Bureau of Prisons, including submitting a request for compassionate release and pursuing all available administrative review. Despite exhausting those remedies, the Bureau of Prisons declined to provide relief, leaving this Court as the only remaining forum capable of addressing the extraordinary circumstances presented.

Defendant also respectfully requests that the Court determine that continued incarceration is no longer necessary to accomplish the objectives of sentencing set forth in 18 U.S.C. § 3553(a). Since sentencing, Defendant has accepted full responsibility for her conduct, demonstrated meaningful rehabilitation, maintained a positive institutional adjustment, and continued to comply with the rules and expectations of the Bureau of Prisons despite experiencing significant physical decline. She has no history of violence, no meaningful criminal history prior to this case, and no evidence suggests that she presents any danger to the safety of another person or to the community. Her present medical condition significantly limits her physical abilities and further reduces any possibility that she would pose a future risk.

Defendant respectfully asks this Court to conclude that the purposes of sentencing have been substantially fulfilled. She has served a significant portion of the sentence imposed by this Court, accepted responsibility for her actions, demonstrated rehabilitation, and endured an extraordinary decline in her physical health during her incarceration. Continued imprisonment under these circumstances no longer meaningfully advances the goals of punishment, deterrence, or protection of the public. Instead, it unnecessarily limits Defendant's ability to obtain the specialized medical treatment that her physicians have determined is medically necessary to preserve her health and quality of life.

Accordingly, Defendant respectfully requests that this Court reduce her sentence to time served and permit her immediate release so that she may begin serving her previously imposed term of supervised release. Defendant further requests that she be permitted to reside with her family, continue treatment under the care of her treating physicians and medical specialists, and comply with every condition of supervised release imposed by this Court and the United States Probation Office.

Should the Court determine that additional conditions of supervised release or home confinement are appropriate, Defendant respectfully represents that she will fully comply with every condition imposed and will continue to cooperate with all directives issued by the Court and the United States Probation Office. Defendant welcomes continued supervision and accountability as she continues her medical treatment and reintegration into the community.

Finally, Defendant respectfully requests such other, further, and additional relief as this Honorable Court deems just, equitable, and appropriate under the circumstances. Compassionate release was created to address precisely the type of extraordinary and unforeseen circumstances

presented in this case. Defendant respectfully submits that the interests of justice, compassion,

and faithful application of federal law all support granting the relief requested herein.

Respectfully submitted,

Niloufar Bahadorifar, Pro Se
BOP Register No. 53318-509
FCI Hazelton
1640 Sky View Drive
Bruceton Mills, WV 26525

# CERTIFICATE OF SERVICE

I, Niloufar Bahadorifar, Defendant and Movant, proceeding **pro se**, hereby certify under penalty of perjury that on this __16__ day of ___July___, 2026, I caused a true and correct copy of the foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), together with all exhibits attached thereto addressed to the following:

**Clerk of Court**
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**United States Attorney**
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and

correct.

Respectfully submitted,

Niloufar Bahadur

Niloufar Bahadorifar, Pro Se
BOP Register No. 53318-509
FCI Hazelton
1640 Sky View Drive
Bruceton Mills, WV 26525

Niloufar Bahadorfar, Reg.# 53318-509
FCI Hazelton
Federal Correctional Institution
P.O. Box 5000
Bruceto mills, WV 2625

Criminal
Docketing

CPU

U.S. POSTA
$9.27
FCMF   RDC
Orig: 33484
Dest: 10007
07/16/26
2088993815
S2324N500784

CLERK OF COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of NEW YORK
DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL ST.
NEW YORK, NEW YORK 10007

RECEIV
JUL 24 2026
CLERK'S OFFICE
S.D.N.Y.

USP
SDN



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®

9589 0710 5270 4384 2625 1

FCI Hazelton
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 2625

Criminal Docketing

CLERK OF COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of NEW YORK
DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL ST.
NEW YORK, NEW YORK 10007


CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

9589 0710 5270 4384 2625 01

RECEIVED
JUL 24 2026
CLERK'S OFFICE
S.D.N.Y.

USPS
SDNY

Orig. 33484
Dest: 10007
07/16/26
2088993815